UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RICHARD JOSEPH GERACE,

                Plaintiff,

                                  **Hon. Hugh B. Scott**

                v.                                   12CV412A

                                            **Report
and
Recommendation**

MICHAEL J. ASTRUE Commissioner of
Social Security,

                Defendant.

      Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 12 (defendant Commissioner), 14 (plaintiff)).

## INTRODUCTION

      This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

      The plaintiff, Richard Joseph Gerace ("Gerace" or "plaintiff"), filed an application for disability insurance benefits on June 19, 2008. That application was denied initially and on reconsideration. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated November 5, 2010, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision

became the final decision of the Commissioner on March 2, 2012, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on May 7, 2012 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 12 (defendant), 14 (plaintiff)). The motions were submitted on the papers (Docket Nos. 8, 11).

## FACTUAL BACKGROUND[1]

Plaintiff was 36 years of age in 2008 when he applied for Social Security benefits and had a high school education (R. 26). He last worked as a palletizer (R. 26). Plaintiff claims disability due to degenerative disc disease, disc herniation at L4-L5 and L5-S1, and acquired spondylolysis (R. 19). ALJ Milagros Farnes found that plaintiff's back conditions were offset by plaintiff's obesity (R. 19-20, 24)[2]. Plaintiff did not engage in substantial gainful activity from a February 4, 2003, onset date to December 31, 2008 (R. 19).

## MEDICAL AND VOCATIONAL EVIDENCE

Although plaintiff's impairments were severe (because they caused more than a minimal limitation in his ability to perform work), he did not have an impairment or combination of impairments that met or medically equaled a listed impairment under the regulations (R. 19). The ALJ found that plaintiff had a residual functional capacity to perform sedentary work, but limited to lifting, carrying, pushing or pulling no more than ten pounds, not climb stairs, but could sit, stand, and walk for thirty minutes at a time (R. 20).

---

[1] References noted as "(R.__)" are to the certified record of the administrative proceedings.

[2] Plaintiff weighed 223 pounds at 5'9" in May 2005, R. 286, and found in 2010 to weigh 220 pounds at 5'10" and have a body mass index (or "B.M.I.") of 31.6, R. 658, 24.

In considering plaintiff's symptoms, the ALJ followed a two-step process; first, determining whether he had a medically determinable physical impairment, and, second, whether the intensity, persistence, and limiting effects of the symptoms limit plaintiff's functioning, including within this step an evaluation of plaintiff's credibility (R. 20). The ALJ then found, for the second step, that plaintiff's claims regarding the frequency, intensity, and limitations from his impairment were not supported by the record, given the medical evaluations and plaintiff's daily activities (R. 21).

Plaintiff testified that he could lift up to 10 pounds and sit or stand for a half hour (R. 204; Docket No. 13, Def. Memo. at 19). He stated that he could lift a full gallon bottle of milk (R. 47; see Docket No. 13, Def. Memo. at 19) and has driven for 45 minutes at a stint (R. 54; Docket No. 13, Def. Memo. at 19). During the ALJ's hearing, plaintiff testified that his girlfriend and children did house and yard work because he could not do it (R. 48), that he was in constant pain (R. 46), and suffered from the side effects of the pain medication (R. 49; Docket No. 15, Pl. Reply at 3). He testified that he could stand for an hour, but he is sitting and standing, standing then sitting (R. 67; Docket No. 15, Pl. Reply at 3).

The ALJ adopted the opinions of Dr. William Capicotto, Dr. Eugene Gosy, Dr. Leonard Kaplan, Dr. Owen Young, Dr. Robert Wilson, and Dr. Raghupathy Varavenkataraman[3] to be consistent with the record, each opining that plaintiff had some degree of limitation but not restricting him from all activity (R. 24-25; see also Docket No. 14, Pl. Memo. at 3). Dr. Varavenkataraman concluded that plaintiff could not return to his former work but could

---

[3]As spelled in medical records from that doctor, e.g., R. 259; but cf. R. 22; Docket No. 16, Def. Reply Memo. at 2.

work with restrictions in another field, while Dr. Wilson advised that plaintiff engage in physical exercise (R. 25). The ALJ found that plaintiff could not return to his past relevant work (R. 26). Dr. Varavenkataraman found that plaintiff was unable to work in 2004 (R. 259-63), but the ALJ limited that restriction just to that period of time, with Dr. Varavenkataraman later noting in 2007 that plaintiff continued to attend work training (R. 299, 25).

No doctors opined that plaintiff's level of work should be restricted below sedentary work with limitations (R. 25).

As a younger worker, at Step 5, the ALJ found (based upon the opinion of vocational expert Luther Pearsall[4]) that plaintiff could perform certain sedentary jobs in the national economy (such as weight tester, surveillance monitor, and quotation clerk) despite his further limitations (R. 26-27). The hypothetical used by the expert was a claimant who could work for 15 minutes, sit for 30 minutes, lift up to 10 pounds but not climb stairs (R. 70). Given this hypothetical scenario, the expert identified the four sedentary jobs later found by the ALJ that plaintiff could perform (R. 70-73, 75-80; R. 27).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

---

[4]Or Piersol, see R. 69 (name as transcribed by court reporter).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that his impairment prevents him from returning to his previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

> (1) whether the plaintiff is currently working;
>
> (2) whether the plaintiff suffers from a severe impairment;

> (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
> (4) whether the impairment prevents the plaintiff from continuing his past relevant work; and
>
> (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing his past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work he has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to his past relevant work given his residual functional capacity. Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994).

*Application*

In the instant case, plaintiff contends that the ALJ failed to have supporting evidence for the residual functional capacity finding (Docket No. 14, Pl. Memo. at 16-19), faulting the ALJ for not asking the treating physicians for their opinions of plaintiff's functional capacity (id. at 16-17), and lacked a function-by-function finding to justify his conclusion that plaintiff still could perform sedentary work under certain conditions (id. at 19-22). Plaintiff next argues that

the ALJ applied the erroneous legal standards in assessing plaintiff's credibility (id. at 22-24) and in using the vocation expert's testimony absent substantial evidence to support the hypothetical posed to the expert (id. at 24-25).

Plaintiff argues that there was no medical record to support the ALJ's residual functional capacity finding (Docket No. 14, Pl. Memo. at 16-19). But there is in plaintiff's medical record a consistent statement by his treating physicians and those who evaluated him that, while limited due to his ailments, plaintiff could perform sedentary work with limitations (see also Docket No. 16, Def. Reply Memo. at 2-3).

Next, he contends that the ALJ erred in the determining the degree of his disability assigned by his treating sources, finding that plaintiff's disability was temporary, partial, and moderate while his doctors found that this disability was permanent and marked (Docket No. 14, Pl. Memo. at 19; cf. R. 25, 472, 474). But, as plaintiff notes elsewhere (cf. Docket No. 15, Pl. Reply at 2), the marked characterizations were applying the New York State workers compensation system's standards and not necessarily the Social Security's definitions for these terms. The medical record uniformly found that plaintiff had limitations from his ailments but not sufficiently debilitating to make him disabled (see Docket No. 16, Def. Reply Memo. at 3). The ALJ noted that Dr. Capicotto found that plaintiff had a "marked and permanent disability" but then noted that Dr. Capicotto stated that plaintiff was fit for retraining and for sedentary work (R. 25, 472). Plaintiff distinguishes the New York State workers compensation standards from those of Social Security, explaining that his doctors were responding to his workers compensation application and not applying the Social Security standards (or the record needs to be reopened to ask for the doctors' opinions based on the Social Security standards, Docket

7

No. 15, Pl. Reply Memo. at 2-3). But looking at Dr. Capicotto's reports, although addressing workers compensation standards, he did find that plaintiff could return to work under restrictions for lifting up to 20 pounds, while recognizing that plaintiff's pain was more than moderate (differing with the workers compensation standards for "moderate" pain) (R. 472). Dr. Capicotto later found in 2010 that plaintiff had a marked permanent disability (again, under workers compensation standards) but assessed that he was fit for sedentary type of work and for retraining (R. 659).

As for the ALJ not presenting a function-by-function analysis, by discussing generally the findings from plaintiff's medical sources, the ALJ considered the various functions showing his limitations. Thus, a remand is not required, see Drennan v. Astrue, No. 10CV6007, 2012 WL 42496, at *5-6 (W.D.N.Y. Jan. 9, 2012) (Telesca, J.) (Docket No. 16, Def. Reply Memo. at 5, 6).

Next, plaintiff faults the ALJ for misapplying the appropriate standard to test his credibility, by resting upon the ALJ's findings as the test for plaintiff's credibility rather than the medical record (Docket No. 14, Pl. Memo. at 22-24). The ALJ gave great weight to the medical sources. In rejecting plaintiff's credibility as to the intensity, persistence, and limiting effects of his symptoms, the ALJ based it upon the medical record previously discussed (R. 26), which uniformly found that plaintiff has limitations but was not disabled (see R. 25-26). Although plaintiff notes (Docket No. 15, Pl. Reply Memo. at 2) that Dr. Varavenkataraman gave plaintiff a note in July 2003 allowing him to be off work, it was limited in duration to October 1, 2003 (R. 262), with further notes given in subsequent examinations (R. 261 (September 2003 to January 2004), 260 (to March 2004), 535 (February to May 2005)). Plaintiff also points out that he had been on a cane (R. 408, 409) in September 2008, but Dr. Capicotto had advised him to

8

wean himself off the cane and use normal ambulation (R. 410). The ALJ also found that plaintiff attended classes (R. 21, 25; see R. 52, 59, 61; Docket No. 13, Def. Memo. at 21-22) and engaged in daily life activities (R. 21, 24; see R. 51, 54, 201-03; Docket No. 13, Def. Memo. at 22; Docket No. 16, Def. Reply Memo. at 9). Thus, the ALJ's credibility finding is supported by the record before the ALJ, see Aponte v. Secretary, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (the ALJ's credibility determinations entitled to deference on appeal).

As for the vocational expert and the hypothetical posed, the hypothetical is based upon plaintiff's medical record and is supported by substantial evidence (see Docket No. 16, Def. Reply at 9, citing Calabrese v. Astrue, 358 Fed. Appx. 274, 276-77 (2d Cir. 2009)).

The ALJ had a sufficient record to find that, while impaired by his ailments, plaintiff could perform sedentary work with limitations.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **AFFIRMED**. Defendant's motion for judgment on the pleadings (Docket No. 12) should be **granted** and plaintiff's motion for similar relief in his favor (Docket No. 14) should be **denied**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within fourteen (14) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective**

Dec. 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).  **Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.**  Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

                   /s/ Hugh B. Scott
                   Hon. Hugh B. Scott
                   United States Magistrate Judge

Buffalo, New York
February 14, 2013